**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DR. NORMAN HECHING**;
**JOSEPH WERFEL**;
**AVRAHAM NEFOUSSI**;
**DAVID SAMUEL SALIS**, individually and as parent
and natural guardian of minor E.Y.S.;
**DANA-LEE SALIS**, individually and as parent and
natural guardian of minor E.Y.S.;                                    Civ. No.
**E.Y.S.**, minor, by his parents and natural guardians
David Samuel Salis and Dana-Lee Salis;
**AKIVA POLLACK**;
**RABBI SAUL GOLDSTEIN**, individually and as
parent and natural guardian of minors S.R.G., M.G.,
B.Y.G., E.G., A.D.G., N.G. and B.G.;
**MIRIAM GOLDSTEIN**, individually and as parent and
natural guardian of minors S.R.G., M.G., B.Y.G., E.G.,
A.D.G., N.G. and B.G.;
**S.R.G.**, minor, by her parents and natural guardians
Rabbi Saul Goldstein and Miriam Goldstein;
**M.G.** minor, by his parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**B.Y.G.** minor, by her parents and natural guardians
Rabbi Saul Goldstein and Miriam Goldstein;
**E.G.** minor, by his parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**A.D.G.**, minor, by his parents and natural guardians
Rabbi Saul Goldstein and Miriam Goldstein;
**N.G.**, minor, by her parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**B.G.**, minor, by her parents and natural guardians Rabbi
Saul Goldstein and Miriam Goldstein;
**MALKA GOLDSTEIN**;
**MOSHE GEDALIAH GOLDSTEIN**;
**HAYA LEVINE**, individually, as parent and natural
guardian of minors A.L., C.L., and Y.Y.L., and as
personal representative of the Estate of Rabbi Kalman
(Cary) Levine;
**ESTATE OF RABBI KALMAN (CARY) LEVINE**;
**A.L.**, minor, by his parent and natural guardian Haya
Levine;
**C.L.**, minor, by her parent and natural guardian Haya
Levine;
**Y.Y.L.**, minor, by his parent and natural guardian Haya

Levine;

**MICHAL LEVINE**, individually and as parent and natural guardian of minor H.Y.A.

**H.Y.A.**, minor, by her parent and natural guardian Michal Levine;

**BASSHEVA MIRIAM PELCOVICS**, individually and as parent and natural guardian of minors L.Y.P., Y.M.P., N.B.P., and Y.C.P.;

**L.Y.P.**, minor, by her parent and natural guardian Bassheva Miriam Pelcovics;

**Y.M.P.**, minor, by his parent and natural guardian Bassheva Miriam Pelcovics;

**N.B.P.**, minor, by his parent and natural guardian Bassheva Miriam Pelcovics;

**Y.C.P.**, minor, by his parent and natural guardian Bassheva Miriam Pelcovics;

**YITZCHOK MEIR LEVINE;**

**YERACHMIEL LEVINE;**

**MOSHE LEVINE;**

**AVRAHAM LEVINE;**

**STEFANIE LEVINE**;

**SHELLEY LEVINE**;

**YAKOVA KUPINSKY**, individually, as parent and natural guardian of minors Y.K.(1), D.K., M.K., and Y.K.(2), and as personal representative of the estate of Rabbi Aryeh Kupinsky;

**ESTATE OF RABBI ARYEH KUPINSKY**, by its personal representative Yakova Kupinsky;

**Y.K.(1)**, minor, by his parent and natural guardian Yakova Kupinsky;

**D.K.**, minor, by her parent and natural guardian Yakova Kupinsky;

**M.K.**, minor, by her parent and natural guardian Yakova Kupinsky;

**Y.K.(2)**, minor, by his parent and natural guardian Yakova Kupinsky;

**ELIYAHU KUPINSKY**;

**BASHY MIRIAM TWERSKY**, individually and as personal representative of the Estate of Rabbi Moshe Twersky;

**MESHULEM TWERSKY**, individually, as parent and natural guardian of minors R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), and S.T., and as personal representative of the Estate of Rabbi Moshe Twersky;

**R.T.(1)**, minor, by her parent and natural guardian Meshulem Twersky;

**C.T.**, minor, by her parent and natural guardian
Meshulem Twersky;
**E.T.(1)**, minor, by her parent and natural guardian
Meshulem Twersky;
**Y.T.**, minor, by his parent and natural guardian
Meshulem Twersky;
**M.T.**, minor, by his parent and natural guardian
Meshulem Twersky;
**E.T.(2)**, minor, by her parent and natural guardian
Meshulem Twersky;
**S.T.**, minor, by her parent and natural guardian
Meshulem Twersky;
**ESTATE OF RABBI MOSHE TWERSKY**, by its
personal representatives Bashy Miriam Twersky and
Meshulem Twersky;
**REFAEL TWERSKY**, individually and as parent and
natural guardian of minors A.T., I.T., and R.T.(2);
**A.T.**, minor, by his parent and natural guardian Refael
Twersky;
**I.T.**, minor, by her parent and natural guardian Refael
Twersky;
**R.T.(2)**, minor, by her parent and natural guardian Refael
Twersky;
**RIVKA WALDER**, individually and as parent
and natural guardian of minors Y.A.W., I.W.
and Y.W.;
**Y.A.W.**, minor, by his parent and natural guardian Rivka
Walder;
**I.W.**, minor, by her parent and natural guardian Rivka
Walder;
**Y.W.**, minor, by his parent and natural guardian Rivka
Walder;
**NECHAMA CHARLAP**, individually and as parent and
natural guardian of minors I.C. and E.C.;
**I.C.**, minor, by her parent and natural guardian Nechama
Charlap;
**E.C.**, minor, by his parent and natural guardian Nechama
Charlap; and
**AVRAHAM TWERSKY**,

Plaintiffs,

vs.

3

**THE ISLAMIC REPUBLIC OF IRAN**,
c/o Foreign Minister Mohammad Javad Zarif
Ministry of Foreign Affairs
Khomeini Avenue
United Nations Street
Tehran, Iran

                              Defendant.
_____/

## COMPLAINT

Plaintiffs, by counsel, bring this action for damages against Defendant, the Islamic

Republic of Iran, and allege as follows:

## INTRODUCTION

1.      This is a civil action brought pursuant to the Foreign Sovereign Immunities Act,

28 U.S.C. § 1602, *et. seq*. (the "FSIA") seeking damages for wrongful death, personal injury and

related torts, that resulted from a terrorist shooting and stabbing attack carried out by the Popular

Front for the Liberation of Palestine ("PFLP") terrorist organization on November 18, 2014, in

Jerusalem, Israel (the "Terrorist Attack").

2.      Defendant, the Islamic Republic of Iran ("Iran"), provided the PFLP with material

support and resources, authorized and ratified the actions of its officers, employees and agents

described herein, and took other actions that facilitated, enabled, and caused the Terrorist Attack.

3.      This action is brought by the estates of U.S. citizens Rabbi Kalman (Cary) Levine,

Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky, who were murdered in the Terrorist Attack;

by U.S. citizens Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, David Samuel Salis,

Akiva Pollack, Rabbi Saul Goldstein, and M.G., minor, all of whom were present at the scene of

the Terrorist Attack and suffered serious physical, emotional, and/or other injuries therein or as a

result thereof; and by the family members of the aforementioned decedents and plaintiffs.

4

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter and over the defendant pursuant to 28

U.S.C. §§ 1330, 1331, and 1605A. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f).

**THE PARTIES**

5.      Plaintiff Dr. Norman Heching was stabbed during the Terrorist Attack, and is and

at all times was an American citizen.

6.      Plaintiff Joseph Werfel was present at the scene of the Terrorist Attack, and is and

at all times was an American citizen.

7.      Plaintiff Avraham Nefoussi was present at the scene of the Terrorist Attack, and is

and at all times was an American citizen.

8.      Plaintiff David Samuel Salis was present at the scene of the Terrorist Attack and

is and at all times was an American citizen. David Samuel Salis brings this action individually

and as parent and natural guardian of his son, minor plaintiff E.Y.S.

9.      Plaintiff Dana-Lee Salis is and at all relevant times was the spouse of plaintiff

David Samuel Salis. Dana-Lee Salis brings this action individually and as parent and natural

guardian of her son, minor plaintiff E.Y.S.

10.     Plaintiff E.Y.S., minor, is and at all times was an American citizen, and the son of

plaintiffs David Samuel Salis and Dana-Lee Salis.

11.     Plaintiff Akiva Pollack was present at the scene of the Terrorist Attack, and is and

at all times was an American citizen.

12.     Plaintiff Rabbi Saul Goldstein was stabbed during the Terrorist Attack, and is and

at all times was an American citizen. Rabbi Saul Goldstein brings this action individually and as

parent and natural guardian of his minor children, plaintiffs S.R.G., M.G., B.Y.G., E.G., A.D.G., N.G., and B.G.

13.     Plaintiff Miriam Goldstein is and at all relevant times was an American citizen, and the spouse of plaintiff Rabbi Saul Goldstein. Miriam Goldstein brings this action individually and as parent and natural guardian of her minor children, plaintiffs S.R.G., M.G., B.Y.G., E.G., A.D.G., N.G., and B.G.

14.     Plaintiff S.R.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

15.     Plaintiff M.G., minor, is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein. Plaintiff M.G. was also present at the scene of the Terrorist Attack.

16.     Plaintiff B.Y.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

17.     Plaintiff E.G., minor, is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

18.     Plaintiff A.D.G., minor, is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

19.     Plaintiff N.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

20.     Plaintiff B.G., minor, is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

21.     Plaintiff Malka Goldstein is and at all times was an American citizen, and the daughter of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

22.     Plaintiff Moshe Gedaliah Goldstein is and at all times was an American citizen, and the son of plaintiffs Rabbi Saul Goldstein and Miriam Goldstein.

23.     Plaintiff Haya Levine is and at all relevant times was an American citizen. She is the widow and personal representative of the estate of American citizen, Rabbi Kalman (Cary) Levine, who was murdered in the Terrorist Attack. Haya Levine is also the mother of minor plaintiffs A.L., C.L., and Y.Y.L. Haya Levine brings this action individually, on behalf of the Estate of Rabbi Kalman (Cary) Levine, and as parent and natural guardian of her minor children, A.L., C.L., and Y.Y.L.

24.     Plaintiff the Estate of Rabbi Kalman (Cary) Levine brings this action through its personal representative, plaintiff Haya Levine.

25.     Plaintiff A.L., minor, is and at all times was an American citizen and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

26.     Plaintiff C.L., minor, is and at all times was an American citizen and the daughter of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

27.     Plaintiff Y.Y.L., minor, is and at all times was an American citizen and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

28.     Plaintiff Michal Levine is and at all times was an American citizen, and the daughter of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine. Michal Levine brings this action individually and as parent and natural guardian of her minor daughter plaintiff H.Y.A.

29.     Plaintiff H.Y.A., minor, is and at all times was an American citizen, and the granddaughter of Rabbi Kalman (Cary) Levine.

30.     Plaintiff Bassheva Miriam Pelcovics is and at all times was an American citizen, and the daughter of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine. Bassheva Miriam

Pelcovics brings this action individually and as parent and natural guardian of her minor children plaintiffs L.Y.P., Y.M.P., N.B.P., and Y.C.P.

31.     Plaintiffs L.Y.P., Y.M.P., N.B.P., and Y.C.P. are and at all times were American citizens, and the grandchildren of Rabbi Kalman (Cary) Levine.

32.     Plaintiff Yitzchok Meir Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

33.     Plaintiff Yerachmiel Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

34.     Plaintiff Moshe Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

35.     Plaintiff Avraham Levine is and at all times was an American citizen, and the son of Rabbi Kalman (Cary) Levine and plaintiff Haya Levine.

36.     Plaintiff Stefanie Levine is and at all times was an American citizen, and the sister of Rabbi Kalman (Cary) Levine.

37.     Plaintiff Shelley Levine is and at all times was an American citizen, and the sister of Rabbi Kalman (Cary) Levine.

38.      Plaintiff Yakova Kupinsky is and at all relevant times was an American citizen. She is the widow and personal representative of the estate of American citizen, Rabbi Aryeh Kupinsky, who was murdered in the Terrorist Attack, and the mother of minor plaintiffs Y.K.(1), D.K., M.K., and Y.K.(2). Yakova Kupinsky brings this action individually, on behalf of the Estate of Rabbi Aryeh Kupinsky, and as parent and natural guardian of her minor children, Y.K.(1), D.K., M.K., and Y.K.(2).

39.     Plaintiff the Estate of Rabbi Aryeh Kupinsky brings this action through its personal representative, plaintiff Yakova Kupinsky.

40.     Plaintiff Y.K.(1), minor, is and at all times was an American citizen and the son of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

41.     Plaintiff D.K., minor, is and at all times was an American citizen and the daughter of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

42.     Plaintiff M.K., minor, is and at all times was an American citizen and the daughter of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

43.     Plaintiff Y.K.(2), minor, is and at all times was an American citizen and the son of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

44.     Plaintiff Eliyahu Kupinsky, is and at all times was an American citizen and the son of Rabbi Aryeh Kupinsky and plaintiff Yakova Kupinsky.

45.     Plaintiff Bashy Miriam Twersky is and at all relevant times was an American citizen. She is the widow and personal representative of the estate of American citizen, Rabbi Moshe Twersky, who was murdered in the Terrorist Attack. Bashy Miriam Twersky brings this action individually and on behalf of the Estate of Rabbi Moshe Twersky.

46.     Plaintiff Meshulem Twersky is and at all relevant times was an American citizen, and the son of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Together with his mother, plaintiff Bashy Miriam Twersky, he is personal representative of the Estate of Rabbi Moshe Twersky. Meshulem Twersky brings this action individually, on behalf of the Estate of Rabbi Moshe Twersky, and as parent and natural guardian of his minor children plaintiffs R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), and S.T.

47.     Plaintiffs R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), and S.T., minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

48.     Plaintiff the Estate of Rabbi Moshe Twersky brings this action through its personal representatives, plaintiffs Bashy Miriam Twersky and Meshulem Twersky.

49.     Plaintiff Refael Twersky is and at all times was an American citizen, and the son of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Rafael Twersky brings this action individually and as parent and natural guardian of his minor children plaintiffs A.T., I.T., and R.T.(2).

50.     Plaintiffs A.T., I.T., and R.T.(2), minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

51.      Plaintiff Rivka Walder is and at all times was an American citizen, and the daughter of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Rivka Walder brings this action individually and as parent and natural guardian of her minor children plaintiffs Y.A.W., I.W., and Y.W.

52.     Plaintiffs Y.A.W., I.W., and Y.W., minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

53.     Plaintiff Nechama Charlap is and at all times was an American citizen, and the daughter of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky. Nechama Charlap brings this action individually and as parent and natural guardian of her minor children plaintiffs I.C. and E.C.

54.     Plaintiffs I.C. and E.C., minors, are and at all times were American citizens, and the grandchildren of Rabbi Moshe Twersky.

55.     Plaintiff Avraham Twersky is and at all times was an American citizen, and the son of Rabbi Moshe Twersky and plaintiff Bashy Miriam Twersky

56.     Defendant the Islamic Republic of Iran is, and at all times relevant hereto was, a foreign state within the meaning of 28 U.S.C. § 1603, designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)). Iran provided material support and resources for the commission of acts of extrajudicial killing, within the meaning of 28 U.S.C. § 1605A, including the Terrorist Attack, authorized and ratified the actions of its officers, employees and agents described herein, and performed other actions that facilitated, enabled, and caused the Terrorist Attack and the harm to the plaintiffs herein.

## STATEMENT OF FACTS

### The Popular Front for the Liberation of Palestine

57.     The Popular Front for the Liberation of Palestine ("PFLP") was formed in 1967. It is a radical Marxist-Leninist terrorist organization. The PFLP's openly-declared goal is the destruction of the State of Israel and the murder or expulsion of its Jewish residents. The PFLP seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel and elsewhere. The PFLP proudly and openly acknowledges that it uses terrorism to achieve its political goals.

58.     The PFLP is also extremely hostile to the United States, which it considers to be predatory, imperialistic, capitalistic, and an ally of Israel. The PFLP's hostility to the U.S. has become even greater since the outbreak of the civil war in Syria in 2011.

59.     Between the time of its founding and November 18, 2014 (and through the present day), PFLP has carried out hundreds of terrorist attacks in which scores of Israeli and U.S. citizens were murdered and hundreds more wounded.

60.     The PFLP has been continuously designated by the United States Government as a Specially Designated Terrorist ("SDT") since 1995, as a Foreign Terrorist Organization ("FTO") since 1997, and as a Specially Designated Global Terrorist ("SDGT") since 2001.

### Iran Shares the PFLP's Goals and Supports its Terrorist Activities

61.     Since the 1979 Iranian Revolution, Iran has been ruled by a series of governments deeply hostile to the United States and to Israel.

62.     Since 1984 until the present time, Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

63.     During all periods relevant to this suit, it has been the continuous and official policy of Iran to use terrorism against the United States and its allies, including Israel, to advance its interests both domestically and abroad. By providing material support and resources to terrorist organizations, Iran is able to enlist these terrorist proxies to carry out attacks against the United States and Israel, and advance Iranian interests around the world. Iran exploits its support for terrorist organizations to obtain leverage with other countries, either "punishing" them or obtaining concessions from them.

64.     Additionally, Iran utilizes its support of international terrorism to attempt to (a) intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically and (b) intimidate and influence the Israeli government and public and thereby seek to bring about the eventual eradication of the State of Israel, its replacement with an Arab state, and the murder and/or expulsion of the Jewish residents of the State of Israel.

65.     Towards these ends, Iran has provided massive material support and resources to numerous anti-American and anti-Israel terrorist organizations, including the PFLP, which shares Iran's violently anti-American and anti-Israel ideology.

### Iran's Provision of Material Support and Resources to the PFLP

66.     During the period relevant hereto, Iran provided the PFLP with material support and resources within the meaning of 28 U.S.C. § 1605A(a)(1), described in detail below, with the specific intention of causing and facilitating the commission of acts of extrajudicial killing, including the Terrorist Attack. Such support was provided continuously, routinely and in furtherance and as implementation of a specific policy and practice established and maintained by Iran, in order to assist the PFLP achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel, weakening Israel's economy, social fabric, and military strength and preparedness, and harming Israel's allies and supporters, especially the United States.

67.     Iran provided the material support and resources detailed below pursuant to an agreement reached between Iran and the PFLP in the years prior to the Terrorist Attack, which remains in force until today. Under that agreement, the PFLP undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel and elsewhere, and in return Iran undertook to provide the PFLP with material support and resources to carry out such extrajudicial killings and terrorist attacks. The purpose of this agreement between Iran and the PFLP was to achieve the goals detailed in the preceding paragraph.

68.     Iran provided the material support and resources detailed below through its security and intelligence agencies. These security and intelligence agencies included primarily,

but without limitation, the Islamic Revolutionary Guard Corps ("IRGC"), and a subdivision of the IRGC known as the Islamic Revolutionary Guard Corps-Quds Force ("IRGC-QF").

69.     Iran provided the PFLP with the material support and resources detailed below through officers, employees, and agents of Iran who worked in or with the IRGC and the IRGC-QF. These Iranian officers, employees, and agents included without limitation: Mohammad Ali Jafari, Qasem (or Ghassem) Soleimani, and Hossein Hamadani (collectively below: "Iranian Officials").

70.     In addition, at all times relevant hereto, Iran and the Iranian Officials provided the PFLP with the material support and resources detailed below, by and through the agency of the Hezbollah terrorist organization and other Iranian-supported terrorist groups and terrorist operatives (collectively below: the "Iranian Agents"), which and who received material support and resources from Iran and the Iranian Officials for the purpose of providing material support and resources to the PFLP, and which acted as agents and proxies of Iran and the Iranian Officials for that purpose. The Iranian Officials and the Iranian Agents are collectively referred to below as Iran's "Officials and Agents."

71.     The material support and resources that were provided to the PFLP by Iran and its Officials and Agents in the years immediately prior to the Terrorist Attack for the purpose of facilitating acts of extrajudicial killing and terrorism included inter alia: provision of financial support to the PFLP; provision of specialized and professional military training for the planning and execution of terrorist attacks (hereinafter: "terrorist training") to the PFLP; provision of military-grade explosives, military firearms and other weapons and matériel to the PFLP; providing use of training bases and military facilities in which terrorist training was provided to the PFLP and its operatives; providing the PFLP and its leaders and operatives safe haven and

14

refuge from capture; providing the PFLP means of electronic communication; providing the

PFLP with financial services, including banking and wire transfer services; and providing the

PFLP means of transportation, including allowing leaders and operatives of the PFLP passage on

Iranian-owned aircraft to allow them to avoid detection and carry out further terrorist attacks.

72.     Iran and its Officials and Agents gave substantial aid and assistance to the PFLP,

and provided the massive material support and resources described above to the PFLP, and

thereby aided and abetted the PFLP, all with the specific intention of causing and facilitating the

commission of acts of extrajudicial killing, including the Terrorist Attack. Iran and its Officials

and Agents did so with actual knowledge that the PFLP had killed and injured numerous U.S.

citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be

killed and injured as a result of their aiding, abetting, and provision of material support and

resources to the PFLP.

73.     Iran and its Officials and Agents knowingly and willingly conspired, agreed and

acted in concert with the PFLP, in pursuance of the common plan, design, agreement and goals

discussed above, to cause and facilitate the commission of acts of extrajudicial killing, including

the Terrorist Attack. Iran and its Officials and Agents did so with actual knowledge that the

PFLP had killed and injured numerous U.S. citizens and that additional U.S. citizens and other

innocent civilians would be killed and injured as a result of their conspiracy with the PFLP.

74.     At all times relevant hereto, IRGC and the IRGC-QF were agencies,

instrumentalities and/or offices of Iran, and performed actions on behalf of Iran, in furtherance of

the interests and policy of Iran and within the scope of their agency and office, within the

meaning of 28 U.S.C. §1605A(a)(1) and 28 U.S.C. §1605A(c), which caused the Terrorist Attack

and harm to the plaintiffs herein, in that IRGC and the IRGC-QF implemented and acted as

conduits and instrumentalities for Iran's provision of funds, terrorist training, and other material support and resources to the PFLP for the commission of acts of extrajudicial killing including the Terrorist Attack.

75.     Iran authorized, ratified and approved the actions of IRGC and the IRGC-QF described herein, and is therefore vicariously liable for those actions.

76.     At all relevant times, Iran's Officials and Agents were officers, employees, and/or agents of Iran, and performed actions on behalf of Iran, in furtherance of the interests and policy of Iran, and within the scope of their office, employment and agency, within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c), which caused the Terrorist Attack and harm to the plaintiffs herein, in that the Iran's Officials and Agents authorized, planned and caused the provision of funds, terrorist training and other material support and resources by Iran to the PFLP for the commission of acts of extrajudicial killing including the Terrorist Attack.

77.     Iran authorized, ratified and approved the actions described herein of its Officials and Agents, and is therefore vicariously liable for those actions.

## The Terrorist Attack

78.     The Jerusalem neighborhood of Har Nof is located on the southwestern edge of the city in an area that has been part of the modern State of Israel since Israel's independence in 1948.

79.     Har Nof's population of about 20,000 mostly Orthodox Jews, is unique in that an unusually large percentage of the residents are American citizens.

80.     Har Nof is home to dozens of synagogues. The Congregation Bnei Torah synagogue (the "Synagogue") is one of the largest in the neighborhood.

81.     At an unknown time prior to November 18, 2014, the PFLP planned, conspired and made preparations to carry out a terrorist attack at the Synagogue.

82.     Pursuant to the aforementioned plan, on November 18, 2014, at approximately 6:55 am, two terrorist agents and operatives of the PFLP, Uday Abu Jamal and Ghassan Abu Jamal, burst into the Synagogue wielding firearms, meat cleavers, and an axe, and began shooting and slashing their way through the sanctuary, which was packed with worshipers in the midst of their morning prayers.

83.     Rabbi Kalman (Cary) Levine had attended an earlier prayer service. He came to the Synagogue to discuss a point of Jewish law with the congregation's rabbi. While standing in the hall outside of the prayer sanctuary, Rabbi Levine was brutally murdered by the PFLP terrorists as they entered the Synagogue.

84.     Rabbi Aryeh Kupinsky and Rabbi Moshe Twersky were among those praying in the Synagogue that morning, and were brutally murdered by the PFLP terrorists inside the prayer sanctuary.

85.     Plaintiffs Dr. Norman Heching and Rabbi Saul Goldstein, who were also praying in the Synagogue that morning, were stabbed and seriously injured by the PFLP terrorists. Rabbi Goldstein's young son, plaintiffs M.G., was at morning prayers alongside his father, and witnessed the attack on his father and the other victims.

86.     Plaintiffs Joseph Werfel and David Samuel Salis were present in the Synagogue during the attack, and plaintiffs Avraham Nefoussi and Akiva Pollack, both emergency medical responders, voluntarily arrived at and entered the Synagogue to treat the victims, while the attack was still in progress.

87.     Iran and its Officials and Agents conspired, and acted through and/or in concert, with the PFLP, in pursuit of their common goals, design and agreements, detailed above, to carry out extrajudicial killings and acts of international terrorism, including the November 18, 2014 Terrorist Attack.

88.     The Terrorist Attack was carried out by the PFLP further to and as implementation of its aforementioned agreement and conspiracy with Iran and its Officials and Agents.

89.     The PFLP planned, made the preparations necessary for, and carried out the Terrorist Attack utilizing funds, weapons, terrorist training and other material support, resources, aid and assistance provided by Iran and its Officials and Agents, for the specific purpose of carrying out the Terrorist Attack and other such acts of extrajudicial killing and international terrorism.

## FIRST COUNT
## ACTION FOR DAMAGES UNDER 28 U.S.C. § 1605A(c)

90.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

91.     Iran is a foreign state that since 1984 has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

92.     Iran provided to the PFLP material support and resources, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Terrorist Attack.

93.     Iran conspired with the PFLP to carry out the Terrorist Attack.

94.     IRGC and the IRGC-QF are agencies, instrumentalities and/or offices of Iran, and they provided the material support and resources which caused and facilitated the Terrorist

Attack, and conspired with the PFLP to carry out the Terrorist Attack, all within the scope of their agency and office.

95.     Iran's Officials and Agents are officers, employees, and/or agents of Iran, and they provided the material support and resources which caused and facilitated the Terrorist Attack, and conspired with the PFLP to carry out the Terrorist Attack, all while acting within the scope of their office, employment, and agency.

96.     The PFLP is an agent of Iran, and it carried out the Terrorist Attack while acting within the scope of its agency.

97.     The Terrorist Attack was an extrajudicial killing within the meaning of 28 U.S.C. § 1605A.

98.     Decedent Rabbi Kalman (Cary) Levine was murdered in the Terrorist Attack. The murder of Rabbi Kalman (Cary) Levine caused decedent, his estate, and plaintiffs Haya Levine, A.L., C.L., and Y.Y.L., Michal Levine, H.Y. A., Bassheva Miriam Pelcovics, L.Y.P., Y.M.P., N.B.P., Y.C.P., Yitzchok Meir Levine, Yerachmiel Levine, Moshe Levine, Avraham Levine, Stefanie Levine, and Shelley Levine, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

99.     Decedent Rabbi Aryeh Kupinsky was murdered in the Terrorist Attack. The murder of Rabbi Aryeh Kupinsky caused decedent, his estate, and plaintiffs Yakova Kupinsky, Y.K.(1), D.K., M.K.,Y.K.(2), and Eliyahu Kupinsky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium. The injuries to Rabbi Aryeh Kupinsky's wife and children were severely compounded by their own close

proximity to the Terrorist Attack, hearing the shooting and police and ambulance sirens, and witnessing the police, military, and emergency medical response in the immediate aftermath of the Terrorist Attack, all while knowing that Rabbi Kupinsky was in the Synagogue.

100.    Decedent Rabbi Moshe Twersky was murdered in the Terrorist Attack. The murder of Rabbi Moshe Twersky caused decedent, his estate, and plaintiffs Bashy Miriam Twersky, Meshulem Twersky, R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., Refael Twersky, A.T., I.T., R.T.(2), Rivka Walder, Y.A.W., I.W., Y.W., Nechama Charlap, I.C., E.C., and Avraham Twersky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

101.    Plaintiff Rabbi Saul Goldstein was present in the Synagogue and was stabbed repeatedly during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury (for both himself and his son, plaintiff M.G., who was also present), witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe physical and other injuries as a result, including: stab wounds, disfigurement, loss of physical and mental functions, and multiple surgeries; extreme pain and suffering; severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

102.    Plaintiff M.G. was present in the Synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury (for both himself and his father), and witnessed a terrorist repeatedly stab his father, plaintiff Rabbi Saul Goldstein, and murder and maim the other victims, among many other horrifying sights. Plaintiff M.G. suffered

severe harm as a result of the Terrorist Attack, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; and loss of solatium.

103.    The injuries suffered by plaintiffs Rabbi Saul Goldstein and M.G. in the Terrorist Attack caused plaintiffs Miriam Goldstein, S.R.G., B.Y.G., E.G., A.D.G., N.G., B.G., Malka Goldstein, and Moshe Gedaliah Goldstein, severe harm, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

104.    Plaintiff Dr. Norman Heching was present in the Synagogue and was stabbed during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe physical and other injuries as a result, including: stab wounds, disfigurement, sutures, and loss of physical functions; extreme pain and suffering; severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

105.    Plaintiff Joseph Werfel was present in the Synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

106.    Plaintiff Avraham Nefoussi was present in front of and in the Synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury. He witnessed the terrorists murder and maim the other victims, among many other horrifying

sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

107.    Plaintiff David Samuel Salis was present in the Synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury, witnessed many horrifying sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

108.    Plaintiff David Samuel Salis' presence in the Synagogue during the Terrorist Attack, and the harm suffered by him as a result thereof, caused plaintiff E.Y.S. severe harm, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; and loss of solatium. Plaintiff, E.Y.S.'s emotional injuries were severely compounded by his own close proximity to the Terrorist Attack, hearing the shooting and police and ambulance sirens, and witnessing the police, military, and emergency medical response in the immediate aftermath of the Terrorist Attack, all while knowing that his father was in the Synagogue.

109.    Plaintiff Akiva Pollack was present in front of and in the Synagogue during the Terrorist Attack, was placed in extreme fear of immediate death or serious physical injury. He witnessed the terrorists murder and maim the other victims, among many other horrifying sights, and suffered severe harm as a result, including: severe emotional distress and mental anguish; loss of guidance, companionship and society; loss of consortium; loss of solatium; and pecuniary loss and loss of income.

110.    The murder of the decedents and the harm and injuries suffered by the plaintiffs due to the Terrorist Attack were the direct and proximate result of Iran's conduct described herein.

111.    Iran is therefore liable for the full amount of plaintiffs' damages under 28 U.S.C. § 1605A(c), in such sums as may hereinafter be determined.

112.    Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

**SECOND COUNT**
**WRONGFUL DEATH**
**(Under the Law of the District of Columbia and Other Applicable Law)**

113.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

114.    Iran, itself and/or through its officers, agents, employees and/or co-conspirators, willfully and deliberately caused, authorized, organized, planned, aided, abetted, induced, conspired to commit, provided material support for and executed the Terrorist Attack.

115.    Iran's behavior constituted a breach of legal duties to desist from causing, committing, aiding, abetting, authorizing, inducing, or conspiring to commit, acts of extrajudicial killing, and to refrain from intentionally, recklessly or negligently causing the infliction of death, physical injuries or harm to persons such as the plaintiffs herein and their decedents.

116.    Iran's actions were willful, malicious, intentional, wrongful, unlawful, negligent and/or reckless and were the proximate cause of the Terrorist Attack and the deaths of decedents Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky.

117.    At the time of his death, decedent Rabbi Kalman (Cary) Levine was 55 years of age, enjoying good health, was industrious and in possession of all his faculties.

118.    The murder of Rabbi Kalman (Cary) Levine caused decedent, his estate and plaintiffs Haya Levine, A.L., C.L., Y.Y.L., Michal Levine, H.Y.A., Bassheva Miriam Pelcovics, L.Y.P., Y.M.P., N.B.P., Y.C.P., Yitzchok Meir Levine, Yerachmiel Levine, Moshe Levine, Avraham Levine, Stefanie Levine, and Shelley Levine, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

119.    At the time of his death, decedent Rabbi Aryeh Kupinsky was 43 years of age, enjoying good health, was industrious and in possession of all his faculties.

120.    The murder of Rabbi Aryeh Kupinsky caused decedent, his estate and plaintiffs Yakova Kupinsky, Y.K.(1), D.K., M.K.,Y.K.(2), and Eliyahu Kupinsky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

121.    At the time of his death, decedent Rabbi Moshe Twersky was 59 years of age, enjoying good health, was industrious and in possession of all his faculties.

122.    The murder of Rabbi Moshe Twersky caused decedent, his estate and plaintiffs Bashy Miriam Twersky, Meshulem Twersky, R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., Refael Twersky, A.T., I.T., R.T.(2), Rivka Walder, Y.A.W., I.W., Y.W., Nechama Charlap, I.C., E.C., and Avraham Twersky, severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

123.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

124.     Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**THIRD COUNT**
**SURVIVAL DAMAGES**
**(Under the Law of the District of Columbia and Other Applicable Law)**

125.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

126.     The murder of Rabbi Kalman (Cary) Levine caused him and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the beginning of the Terrorist Attack until his death, decedent Rabbi Kalman (Cary) Levine suffered great conscious pain, shock and physical and mental anguish.

127.     The murder of Rabbi Aryeh Kupinsky caused him and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the beginning of the Terrorist Attack until his death, decedent Rabbi Aryeh Kupinsky suffered great conscious pain, shock and physical and mental anguish.

128.     The murder of Rabbi Moshe Twersky caused him and his estate severe injury, including pain and suffering, pecuniary loss and loss of income. From the beginning of the Terrorist Attack until his death, decedent Rabbi Moshe Twersky suffered great conscious pain, shock and physical and mental anguish.

129.     Iran is therefore liable to the Estates of Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky, for the full amount of decedents' damages, in such sums as may hereinafter be determined.

130.     Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**FOURTH COUNT**
**BATTERY**
**(Under the Law of the District of Columbia and the Law of the State of Israel)**

131.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

132.     The Terrorist Attack was an intentional act that caused harmful bodily contact to plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching, and therefore constituted a battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching under the law of the District of Columbia.

133.     The Terrorist Attack also constituted a battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching under Israeli law.

134.     Causes of action in tort in Israeli law are codified in the *Civil Wrongs Ordinance (New Version) - 1968*, (hereinafter "CWO"). The CWO provides that any person injured or harmed by the torts enumerated in the CWO is entitled to relief from the person liable or responsible for the tort. CWO § 23 creates a tort of Assault and Battery defined as the intentional use of any kind of force, directly or indirectly, against a person's body, in any manner, without that person's consent; or an attempt or threat, by act or gesture, to use force against a person's body, when the person making the attempt or threat can be reasonably assumed to be have the intent and ability to carry out the attempt or threat.

135.     The Terrorist Attack therefore constituted a battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching under Israeli law.

136.     As a result of the injuries inflicted on them by the Terrorist Attack, plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching required hospitalization and medical treatment, and continue to suffer from permanent injuries caused them by the Terrorist Attack.

137.    Iran's actions were willful, malicious, intentional, reckless, unlawful and were the proximate cause of the Terrorist Attack and the battery on the persons of plaintiffs Rabbi Saul Goldstein and Dr. Norman Heching and the injuries plaintiffs suffered thereby.

138.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

139.    Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## FIFTH COUNT
## ASSAULT
**(Under the Law of the District of Columbia and the Law of the State of Israel)**

140.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

141.    The Terrorist Attack caused plaintiffs Rabbi Saul Goldstein, M.G., Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, David Samuel Salis, and Akiva Pollack, imminent fear and apprehension of physical harm and death, and constituted an assault on their persons under the law of the District of Columbia and under § 23 of the Israeli CWO.

142.    The Terrorist Attack and the assault on their persons, which were direct and proximate results of Iran's actions, caused plaintiffs Rabbi Saul Goldstein, M.G., Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, David Samuel Salis, and Akiva Pollack, extreme fear, and profound mental anguish and trauma.

143.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

144.    Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**SIXTH COUNT**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Under the Law of the District of Columbia and Other Applicable Law)**

145.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

146.    Iran's conduct was intentional, outrageous and dangerous to human life, and violates applicable criminal law and all international standards of civilized human conduct and common decency.

147.    Iran intended to, and did in fact, terrorize the decedents and the plaintiffs, and cause them severe emotional distress.

148.    The Terrorist Attack and the murders of decedents Rabbi Kalman (Cary) Levine, Rabbi Aryeh Kupinsky, and Rabbi Moshe Twersky, caused the decedents severe emotional distress. From the beginning of the Terrorist Attack until their deaths, the decedents suffered extreme terror, mental anguish, and injury to their feelings.

149.    As a result of the Terrorist Attack and murder of Rabbi Kalman (Cary) Levine, plaintiffs Haya Levine, A.L., C.L. and Y.Y.L., Michal Levine, H.Y.A., Bassheva Miriam Pelcovics, L.Y.P., Y.M.P., N.B.P., Y.C.P., Yitzchok Meir Levine, Yerachmiel Levine, Moshe Levine, Avraham Levine, Stefanie Levine, and Shelley Levine, have been deprived of the services, society, consortium and solatium of their husband, father, grandfather, and brother, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

150.    As a result of the Terrorist Attack and murder of Rabbi Aryeh Kupinsky, plaintiffs Yakova Kupinsky, Y.K.(1), D.K., M.K., Y.K.(2), and Eliyahu Kupinsky, have been deprived of the services, society, consortium and solatium of their husband and father, and have

suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

151.    As a result of the Terrorist Attack and murder of Rabbi Moshe Twersky, plaintiffs Bashy Miriam Twersky, Meshulem Twersky, R.T.(1), C.T., E.T.(1), Y.T., M.T., E.T.(2), S.T., Refael Twersky, A.T., I.T., R.T.(2), Rivka Walder, Y.A.W., I.W., Y.W., Nechama Charlap, I.C., E.C., and Avraham Twersky, have been deprived of the services, society, consortium and solatium of their husband, father and grandfather, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

152.    As a result of the Terrorist Attack and the ensuring carnage, which they personally witnessed in all its horror, plaintiffs Rabbi Saul Goldstein, M.G., Dr. Norman Heching, Joseph Werfel, Avraham Nefoussi, David Samuel Salis, and Akiva Pollack, have suffered and will continue to suffer extreme terror, severe mental anguish and injury to their feelings.

153.    As a result of Rabbi Saul Goldstein's presence at and injuries in the Terrorist Attack, plaintiffs Miriam Goldstein, S.R.G., M.G., B.Y.G., E.G., A.D.G., N.G., B.G., Malka Goldstein, and Moshe Gedaliah Goldstein have been deprived of the services, society, consortium and solatium of their husband and father, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

154.    As a result of plaintiff M.G.'s presence at, and the injuries suffered by him as a result of, the Terrorist Attack, plaintiffs Rabbi Saul Goldstein, Miriam Goldstein, S.R.G., B.Y.G., E.G., A.D.G., N.G., B.G., Malka Goldstein, and Moshe Gedaliah Goldstein have been deprived of the services, society, consortium and solatium of their son and brother, and have

suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

155.     As a result of plaintiff David Samuel Salis' presence at, and the injuries suffered by him as a result of, the Terrorist Attack, and as a result of their hearing the shooting and police and ambulance sirens, and witnessing the police, military, and emergency medical response in the immediate aftermath of the Terrorist Attack, while knowing that David was in the Synagogue, plaintiffs Dana-Lee Salis and E.Y.S. have been deprived of the services, society, consortium and solatium of their husband and father, and have suffered and will continue to suffer extreme terror, severe mental anguish, bereavement and grief, and injury to their feelings.

156.     Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

157.     Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## SEVENTH COUNT
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Under the Law of the District of Columbia and Other Applicable Law)

158.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

159.     Iran's conduct was willful, outrageous and/or grossly negligent, was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

160.     Iran's conduct terrorized the decedents and the plaintiffs, and caused them severe emotional distress.

161.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

162.    Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

**EIGHTH COUNT**
**NEGLIGENCE**
**(Under the Law of the State of Israel)**

163.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

164.    Section 35 of the Israeli CWO creates a tort of Negligence. CWO §35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

165.    CWO § 36 provides that the obligation stated in CWO § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

166.    Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

167.    Iran committed acts which a reasonable and prudent person would not have committed under the same circumstances, and refrained from committing acts which a

reasonable and prudent person would have committed under the same circumstances, within the meaning of the CWO.

168.    Iran acted negligently in connection with the plaintiffs and their decedents, toward whom, in the circumstances described herein, Iran had an obligation not to act as it did. Iran was obligated not to act as it did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, the plaintiffs' and their decedents were likely to be injured by Iran's acts and omissions described herein.

169.    Iran's behavior therefore constitutes Negligence under the CWO, and as a result of Iran's negligent behavior the decedents were murdered and the decedents and the plaintiffs were severely injured, as set forth herein.

170.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

171.    Iran's conduct was criminal, outrageous, extreme, willful, malicious, and a threat to the public, warranting an award of punitive damages.

## NINTH COUNT
## CIVIL CONSPIRACY
**(Under the Law of the District of Columbia,
the Law of the State of Israel, and Other Applicable Law)**

172.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

173.    Iran knowingly and willingly conspired, agreed and acted in concert with the PFLP in a common plan and design to facilitate and cause acts of international terrorism, extrajudicial killing and personal injury including the Terrorist Attack.

174.     As a result of the Terrorist Attack caused, resulting from, and facilitated by Iran's conspiracy with the PFLP, the decedents and the plaintiffs suffered the damages enumerated herein.

175.     Civil conspiracy principles are recognized in Israeli law in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

176.     Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**TENTH COUNT**
**AIDING AND ABETTING**
**(Under the Law of the District of Columbia,**
**the Law of the State of Israel, and Other Applicable Law)**

177.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

178.     Iran provided the PFLP with material support and resources within the meaning of 28 U.S.C. §1605A, and other substantial aid and assistance, in order to aid, abet, facilitate and cause the commission of acts of international terrorism, extrajudicial killing and personal injury including the Terrorist Attack.

179.     As a result of the Terrorist Attack caused, resulting from and facilitated by Iran's provision of material support and resources to, and other acts of aiding and abetting, the PFLP, the decedents and the plaintiffs suffered the damages enumerated herein.

180.     Aiding and abetting principles are recognized in Israeli law in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission,

committed or about to be committed by another person, or who orders, authorizes, or ratifies

such an act or omission, is liable for such act or omission.

181.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as

may hereinafter be determined.

### ELEVENTH COUNT
### VICARIOUS LIABILITY/RESPONDEAT SUPERIOR
**(Under the Law of the District of Columbia,
the Law of the State of Israel, and Other Applicable Law)**

182.    The preceding paragraphs are incorporated by reference as though fully set forth

herein.

183.    At all relevant times, Iran's Officials and Agents were officers, employees and/or

agents of Iran, acting within the scope of their office, employment, and agency. Iran's Officials

and Agents engaged in the actions described herein within the scope of their office, employment,

and agency and in furtherance of the interests of defendant Iran.

184.    Iran authorized, ratified, and/or condoned the actions described herein of its

Officials and Agents.

185.    Therefore, Iran is vicariously liable for the acts of its Officials and Agents.

186.    Respondeat superior and vicarious liability principles are recognized in Israeli law

in CWO §§ 13 and 14, which provide that an employer is liable for an act or omission committed

by his employee, if the employer authorized or ratified the act or omission, or if the employee

committed the act or omission in the course of his employment, and that a person who employs

an agent for the performance of an act or a category of acts is liable for everything the agent does

in the performance of that act or category of acts, and for the manner in which the agent

performs them.

187.    Iran is therefore liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

**WHEREFORE**, plaintiffs demand judgment as follows:

    a.  Judgment against defendant Iran for compensatory damages in an amount to be determined by the Court which is not less than $350,000,000 (three hundred fifty million dollars);

    b.  Judgment against defendant Iran for punitive damages in an amount to be determined by the Court;

    c.  Plaintiffs' costs and expenses;

    d.  Plaintiffs' attorneys' fees;

    e.  Such further relief as the Court finds just and equitable.

August 15, 2017

Plaintiffs, by their attorneys,

By:     /s/ Asher Perlin        
Asher Perlin, Esq.
4600 Sheridan Street, Suite 303
Hollywood, Florida 33021
Tel. 954-284-0900 ext. 102
Fax. 954-284-0747