**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **NORMAN HECHING et al**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-1192 (TSC) |
| | ) | |
| | ) | |
| **SYRIAN ARAB REPUBLIC,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

|  |  |  |
|---|---|---|
| **NORMAN HECHING et al**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-1659 (TSC) |
| | ) | |
| | ) | |
| **ISLAMIC REPUBLIC OF IRAN**, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiffs are surviving victims, estates of decedent victims, and their family members,
who have sued the Syrian Arab Republic ("Syria") and the Islamic Republic of Iran ("Iran") in
separate actions under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604,
seeking money damages for injuries resulting from a terrorist attack. *See Heching v. Syrian Arab
Republic*, 17-cv-1192, ECF No. 1; *Heching v. Islamic Republic of Iran*, 17-cv-1659, ECF No. 1.

Page **1** of **12**

Plaintiffs filed their case against Syria on June 18, 2017.  17-cv-1192, ECF No. 1.

Because Plaintiffs served Syria with the complaint on January 16, 2018, Syria's answer was due

on March 17, 2018.  Return of Service/Aff. of Summons and Compl. Executed to Syrian Arab

Republic, 17-cv-1192, ECF No. 15.  On August 15, 2017, Plaintiffs filed their action against

Iran.  17-cv-1659, ECF No. 1.  Because Plaintiffs served Iran with the complaint on February 7,

2018, Iran's answer was due on April 8, 2018.  Return of Service/Aff. of Summons and Compl.

Executed to Islamic Republic of Iran, 17-cv-1659, ECF No. 12.

Syria and Iran have not appeared.  *See* Clerk's Entry of Default as to Syria, 17-cv-1192,

ECF No. 17; Clerk's Entry of Default as to Iran, 17-cv-1659, ECF No. 14.  Plaintiffs have

therefore moved for Entry of Final Judgment by Default and ask the court to: 1) enter judgments

on liability against Syria and Iran; 2) refer the calculation of Plaintiffs' damages to a Special

Master appointed pursuant to 28 U.S.C. § 1605A(e); and 3) enter Final Judgments by Default

after reviewing the Special Master's damages recommendations.  *See* Mot. for Default J. as to

Syria, 17-cv-1192, ECF No. 21-1; Mot. for Default J. as to Iran, 17-cv-1659, ECF No. 22-1.[1]

On January 24, 2022, twenty-one Plaintiffs voluntarily dismissed their claims against

Syria and Iran without prejudice.  *See* Notice of Voluntary Dismissal Against Syria, ECF No. 22;

Notice of Voluntary Dismissal Against Iran, ECF No. 23.  Forty-five Plaintiffs remain in these

actions.  Based on the findings of fact set forth below, the court will GRANT in part and DENY

in part the remaining Plaintiffs' motions.

---

[1] The Motions for Default Judgment as to Syria and Iran are identical.  For the sake of brevity, the court will cite to the Mot. for Default J. as to Syria, 17-cv-1192, ECF No. 21-1, when it references Motions and related exhibits.

## I.   FINDINGS OF FACT

Based on the undisputed evidence before it, the court finds the following facts.

In 1967 a group of individuals who sought to unify Arab regimes in the effort to destroy the State of Israel founded the Popular Front for the Liberation of Palestine ("PFLP").  *See* Expert Decl. of Dr. Daniel Byman, 17-cv-1192, ECF No. 21-3 at 7.  At the time, PFLP "saw itself as a vanguard movement that would mobilize the working classes and wage revolutionary warfare" by engaging in "anti-imperialist guerrilla violence and terrorism."  *Id.*

On November 18, 2014, the PFLP carried out an attack on congregants at the Bnei Torah Synagogue in Jerusalem, Israel.  *See* 17-cv-1192, ECF No. 21-1 at 2; Expert Decl. of Dr. Matthew Levitt, 17-cv-1192, ECF No. 21-2 at 6.  Armed with a handgun and butcher knives, PFLP terrorists "shot and hacked their way through the congregation" while congregants were in the middle of their morning prayers.  *See* 17-cv-1192, ECF No. 21-1 at 2.  PFLP terrorists murdered six people, including U.S. citizens Kalman (Cary) Levine, Aryeh Kupinsky, and Mosheh Twersky (together the "Decedent Victims"), and injured numerous others, including U.S. citizens Dr. Norman Heching, Joseph Werfel, David Samuel Salis, Avraham Nefoussi, Akiva Pollack, Saul Goldstein, and his then twelve-year-old son, Mordechai Goldstein (the "Surviving Victims").  *Id.*

The Surviving Victims suffered serious physical injuries and emotional distress.  *See id.* at 6–11.  Heching was slashed across his back by one of the terrorists.  *Id.* at 5.  Another terrorist spotted Saul Goldstein attempting to make a call for help and attacked him with a meat cleaver, severely wounding Goldstein's head and back such that his left ear was "hanging by a thread" and his internal organs were "falling out of his back" as paramedics put him in an ambulance.

*Id.* at 6–7.  Meanwhile Goldstein's son crawled across the blood-stained sanctuary floor to safety, leaving his father behind in the chaos.  *Id.*  The terrorists placed congregants like Werfel and Salis, as well as emergency medical responders like Nefoussi and Pollack in extreme danger and caused them to fear for their lives.  *Id.* at 5.  Following the attack, relatives of those murdered and injured agonized as they awaited news updating them on the status of their loved ones.  *Id.* at 10.

The PFLP leadership has repeatedly and publicly claimed responsibility for the attack, confirming that the perpetrators, Ghassan and Uday Abu Jamal, were PFLP operatives and members of PFLP's armed wing, and that the attack was an official PFLP operation.  *See* Expert Decl. of Arieh Dan Spitzen, 17-cv-01192, ECF No. 21-5 ¶¶ 21-31.  Senior PFLP leader Kayed al-Ghoul explained that the synagogue was selected to send the message that the Palestinians "will defend their city with all they have, until Jerusalem will become Arab, until it will become Palestinian," and that the attack "reinforced Jerusalem's Arab identity, and has thwarted the attempts to Judaize Jerusalem."  *Id.* at ¶ 23.

Syria and Iran provided material support to PFLP in the years prior to 2014, which enabled the terrorist organization to carry out the attack at the Bnei Torah Synagogue.  *See* 17-cv-1192, ECF No. 21-2 at 36.  The PFLP has maintained its headquarters in Syria since 1982.  *See* Expert Decl. of Dr. Daniel Byman, 17-cv-1192, ECF No. 21-3 at 14.  "Without a headquarters in Syria, the PFLP leaders would have been far more vulnerable to Israeli raids or arrests by hostile Arab governments."  *Id.* at 9.  In the years leading up to the 2014 attack, Syria offered a sanctuary, enabling PFLP to recruit, plan operations, train its forces, protect its leadership, and otherwise maintain itself.  *See id.* at 18.  Likewise, Iran has provided large

amounts of financial and military support for the PFLP since at least 2012. *See* Expert Decl. of

Dr. Patrick Clawson, 17-cv-1192, ECF No. 21-4 at ¶¶ 33–36. This support has come directly

from the Iranian government and via proxies such as the terrorist organization Hezbollah, which

for decades has been used by Iran as a conduit to provide material support, including training to

other terrorist groups. *See id.*

## II.      CONCLUSIONS OF LAW

### a. Burden of Proof

Federal Rule of Civil Procedure 55(b)(2) gives a district court the discretion to enter a

default judgment upon a party's motion, but the "entry of a default judgment is not automatic."

*Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). "[S]trong policies favor resolution of

disputes on their merits," and therefore "[t]he default judgment must normally be viewed as

available only when the adversary process has been halted because of an essentially

unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (internal quotations

omitted)). In addition, "the procedural posture of a default does not relieve a federal court of its

'affirmative obligation' to determine whether it has subject matter jurisdiction over the action,"

*Cohen v. Islamic Republic of Iran*, 238 F. Supp. 3d 71, 79 (D.D.C. 2017) (quoting *James

Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996)), and "a court should satisfy itself

that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani*,

417 F.3d at 6. The party seeking default judgment has the burden of establishing both subject

matter and personal jurisdiction. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir.

2008); *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

"Under the FSIA, 28 U.S.C. §§ 1330, 1602–1611, a foreign state is presumptively immune from the jurisdiction of the United States courts; that presumption is overcome only if the plaintiff shows that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605–07 applies." *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005) (internal quotations and citation omitted).  To obtain a default judgment against a defendant under the FSIA, a plaintiff must establish their claim "by evidence satisfactory to the court."  28 U.S.C. § 1608(e).  Thus, the court "may not unquestioningly accept a complaint's unsupported allegations as true," *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012), but "[u]ncontroverted factual allegations that are supported by admissible evidence are taken as true." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 33 (D.D.C. 2016).

 In addition, 28 U.S.C. "§ 1608(e) does not require the court to demand more or different evidence than it would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required." *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017) (emphasis added) (internal quotations omitted); *see also Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014) ("when the defendant State fails to appear and the plaintiff seeks a default judgment, the FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide").  An evidentiary hearing is not required, as a "plaintiff may establish proof by affidavit." *Reed*, 845 F. Supp. 2d at 211; *see also, e.g.*, *Bluth v. Islamic Republic of Iran*, 203 F. Supp. 3d 1, 16-17 (D.D.C. 2016) (explaining that an evidentiary hearing is not required before a plaintiff may be awarded an entry of default judgment on a claim under the FSIA); *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015) ("Courts may rely on

Page **6** of **12**

uncontroverted factual allegations that are support by affidavits."). Moreover, the court may

"take judicial notice of related proceedings and records in cases before the same court." *Ben-*

*Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 43 (D.D.C. 2008).

To prevail on an FSIA claim, a plaintiff must also offer a prima facie case of liability and

present clear and convincing evidence regarding punitive damages. *See Fraenkel v. Islamic*

*Republic of Iran,* 248 F. Supp. 3d 21, 33 (D.D.C. 2017) aff'd in part, rev'd in part sub nom.

*Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs., et al.*, 892 F.3d 348 (D.C. Cir.

2018). Because Plaintiffs have asked the court to appoint a Special Master to determine

damages, the court will not address damages. By their failure to appear and defend themselves,

Syria and Iran put themselves at risk that Plaintiffs' uncontroverted evidence would be sufficient

to prove their remaining claims.

### b. Subject Matter Jurisdiction

"The FSIA confers upon district courts subject matter jurisdiction as to 'any claim for

relief in personam with respect to which the foreign state is not entitled to immunity.'" *TMR*

*Energy Ltd.*, 411 F.3d at 299 (citing 28 U.S.C. § 1330(a)). A plaintiff must demonstrate that one

of the exceptions to immunity under the FSIA applies: (1) waiver, (2) commercial activities, (3)

takings contrary to international law, (4) succession, gifts, and rights in real property, (5)

noncommercial torts, (6) arbitral awards, and (7) terrorism. 28 U.S.C. § 1605. Here, Plaintiffs

argue that the terrorism exception applies. *See* 17-cv-1192, ECF No. 21-1 at 26.

The state-sponsored terrorism exception is codified under 28 U.S.C. § 1605A and

provides that a foreign state is not immune from suit in any case "[1] in which money damages

are sought [2] against a foreign state [3] for personal injury or death that was [4] caused by [5] an

act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."  28 U.S.C. § 1605A.  Plaintiffs argue that the attack at the Bnei Torah Synagogue involved extrajudicial killings for which Syria and Iran provided material support or resources.  *See* 17-cv-1192, ECF No. 21-1 at 27, 31.

The FSIA adopts the same definition of "extrajudicial killing" as the Torture Victim Protection Act of 1991, which defines an "extrajudicial killing" as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all judicial guarantees which are recognized as indispensable by civilized peoples...."  Pub. L. 102–256, 106 Stat. 73 (March 12, 1992); *see Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 61 (D.D.C. 2003) (finding that the FSIA borrows the definition of "extrajudicial killing" from the Torture Victim Protection Act of 1991).

The FSIA adopts the same definition of "material support or resources" as 18 U.S.C. § 2339A(b)(1): "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel . . . , and transportation, except medicine or religious materials."  28 U.S.C. § 1605A(h)(3); *see also Owens*, 174 F. Supp. 3d at 249, aff'd, 864 F.3d 751 (D.C. Cir. 2017) (finding that the FSIA adopts the definition of "provision of material support or resources" from 18 U.S.C. § 2339A).

Moreover, a federal court may hear a claim alleging the terrorism exception applies to a

foreign defendant under 28 U.S.C. § 1605A if: 1) the foreign state where the act occurred was

designated a state sponsor of terrorism at the time of the act and when the claim was filed; 2) the

claimant or victim is a U.S. national, and 3) in a case in which the act occurred in the foreign

state against which the claim has been brought, the claimant gave the foreign state an opportunity

to arbitrate the claim.  *See* 28 U.S.C. § 1605A(a)(2)(A); *see also Reed*, 845 F. Supp. 2d at 210–

11 ("Because the offending act did not occur in the foreign state against which the claim is

brought, the plaintiff is not required to afford the defendants an opportunity to arbitrate his

claim.").

In *Peterson v. Islamic Republic of Iran*, family members of deceased servicemen and

injured survivors alleged that Iran, through the Iranian Ministry of Information and Security

(MOIS) and the terrorist organization Hezbollah, bombed the U.S. Marine barracks in Beirut,

Lebanon in 1983.  264 F. Supp. 2d at 48.  The court held that Iran was not immune from suit

because plaintiffs sought money damages against a foreign state for personal injury or death that

was caused by an extrajudicial killing.  *See id.* at 61 (finding that MOIS acted as an agent of Iran

and deliberately transported and detonated explosive materials at the Marine barracks).  The

court also found that it had subject matter jurisdiction over Iran under the FSIA because Iran had

been designated as a state sponsor of terrorism by the U.S. Department of State, the plaintiffs

were all U.S. nationals, and plaintiffs did not need to afford Iran with the opportunity to arbitrate

the claim.  *See id.* at 48–49, 59.

In *Owens v. Republic of Sudan*, the Circuit affirmed the District Court's subject matter

jurisdiction over the Republic of Sudan regarding allegations that it provided material support to

a terrorist organization that bombed U.S. embassies in Tanzania and Kenya.  864 F.3d at 825

(finding bombings were acts of extrajudicial killing and that Sudan provided material support to

Al-Qaeda by offering a haven from which the organization could direct its operations).

Here, as in *Peterson* and *Owens*, Plaintiffs seek money damages against foreign states

(Syria and Iran) for personal injury or death caused by an extrajudicial killing or the provision of

material support for the act.  The attack on Bnei Torah Synagogue was "well planned;" PFLP

attackers arrived at the synagogue in the morning, waited for it to fill with worshippers, and then

systemically hacked through the crowd.  *See* Expert Decl. of Arieh Dan Spitzen, 17-cv-1192,

ECF No. 21-5 at ¶¶ 16–17 (finding that terrorist demonstrated a "high professional level of

operational performance").  Prior to the attack, Syria and Iran provided the PFLP with material

support and resources for the attack, including safe haven, security, training, financial support,

and weapons.  *See* Expert Decl. of Dr. Matthew Levitt, ECF No. 21-2 at 32–33.  Because both

Syria and Iran were designated as state sponsors of terrorism at the time of the act and when the

claim was brought[2], Plaintiffs are U.S. Nationals[3], and Plaintiffs did not need to afford Syria and

Iran the opportunity to arbitrate the claims against them, this court has subject matter jurisdiction

over the action.

---

[2] Syria was designated as a state sponsor of terrorism on December 29, 1979; Iran was
designated as a state sponsor of terrorism on January 19, 1984.  *See* State Sponsors of Terrorism,
U.S. Department of State, https://www.state.gov/j/ct/list/c14151.htm (last visited February 20,
2023)

[3] *See* 17-cv-1192, Sealed Mot. for Leave to File Docs. Under Seal, ECF No. 20 (attesting that all
Plaintiffs are, and Decedent Victims were, U.S. nationals)

Page **10** of **12**

### c. Personal Jurisdiction

Under the FSIA, a court may exercise personal jurisdiction over a foreign state if it has subject matter jurisdiction and service of process is properly effectuated under 28 U.S.C. § 1608(a). *See GSS Grp. Ltd. v. Nat'l Port Auth., 680 F.3d 805, 811 (D.C. Cir. 2012); Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 397 n.1 (D.C. Cir. 2018). Syria was properly served with process on January 16, 2018, and Iran was properly served with process on February 7, 2018. *See* 17-cv-1192, ECF No. 15; 17-cv-1659, ECF No. 12. Thus, this court has personal jurisdiction over Syria and Iran.

### d. Liability

The FSIA provides a federal cause of action to U.S. nationals for personal injury or death caused by acts described in subsection (a)(1). 28 U.S.C. § 1605A(c). Plaintiffs are U.S. nationals and therefore have a federal cause of action under the FSIA. Because the court has jurisdiction over their claims under § 1605A(a)(1), the essential elements for imposing liability under § 1605A(c) are likewise established. This is because § 1605A(c) expressly incorporates the elements necessary to waive a foreign state's immunity, meaning that liability under § 1605A(c) exists whenever the jurisdictional requirements of § 1605A(a)(1) are met. *See Kilburn v. Islamic Republic of Iran*, 699 F. Supp. 2d 136, 155 (D.D.C. 2010) ("Although an analysis of a foreign sovereign's potential immunity and liability should be conducted separately, the elements of immunity and liability under § 1605A(c) are essentially the same in that § 1605A(a)(1) must be fulfilled to demonstrate that a plaintiff has a cause of action.").

Accordingly, because the court has determined that Syria and Iran, acting through the PFLP, engaged in extrajudicial killing and provided material support and resources for such acts

within the meaning of § 1605A(a)(1), Syria and Iran are liable under § 1605A(c) for any

personal injuries the extrajudicial killings or their material support caused.

### III.   CONCLUSION

For the foregoing reasons, the court will GRANT in part and DENY in part Plaintiffs'

Motions by entering judgments on liability against Syria and Iran and referring the calculation of

Plaintiffs' damages to a Special Master, but reserve entering Final Judgments by Default until

after it has reviewed the Special Master's damages recommendations.

Date:  March 5, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge